# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION - FLINT

In re: )
) Chapter 11
VPH Pharmacy, Inc. )
) Case No. 17-30077
)
Debtor. ) Hon. Daniel S. Opperman
_____/

## COVER SHEET FOR MOTION TO USE CASH
## COLLATERAL OR TO OBTAIN CREDIT

The debtor has filed a motion to use cash collateral or to obtain postpetition financing, which is attached to this Cover Sheet. In accordance with LBR 4001-2(b) (E.D.M.), the debtor has identified below, by page and paragraph number, the location in the proposed order accompanying the motion of each of the following provisions:

| Provision | Contained in Proposed Order | Location in Proposed Order |
|---|---|---|
| (1) Provisions that grant liens on the estate's claims and causes of action arising under Chapter 5 of the Code. | _____ Yes<br><br>__X___ No | Page ____, ¶ ____ |
| (2) Provisions that grant cross-collateralization protection to the prepetition secured creditor (i.e., clauses that secure prepetition debt with categories of collateral that were not covered by the secured party's lien prepetition) other than liens granted solely as adequate protection against diminution in value of a prepetition creditor's collateral. | _____ Yes<br><br>___X__ No | Page ____, ¶ ____ |

| | | |
|---|---|---|
| (3) Provisions that establish a procedure or conditions for relief from the automatic stay. | _____ Yes<br><br>___X__ No | Page ____, ¶ ____ |
| (4) Provisions regarding the validity or perfection of a secured creditor's prepetition liens or that release claims against a secured creditor. | _____ Yes<br><br>___X__ No | Page ____, ¶ ____ |
| (5) Provisions that prime any lien without that lienholder's consent. | _____ Yes<br><br>__X___ No | Page ____, ¶ ____ |
| (6) Provisions that relate to a sale of substantially all of the debtor's assets. | _____ Yes<br><br>___X__ No | Page ____, ¶ ____ |
| (7) Provisions for the payment of professional fees of the debtor or any committees, including any carve-outs for such payments. | ___X__ Yes<br><br>_____ No | Page 4, ¶ C |
| (8) Provisions for the payment of prepetition debt. | _____ Yes<br><br>___X__ No | Page ____, ¶ ____ |
| (9) Provisions that waive the debtor's exclusive right to file or solicit acceptances of a plan during the time periods specified in 11 U.S.C. § 1121. | _____ Yes<br><br>__X___ No | Page ____, ¶ ____ |
| (10) Provisions that require the debtor's plan to be on terms acceptable to the secured creditor. | _____ Yes<br><br>___X_ No | Page ____, ¶ ____ |
| (11) Provisions that require or prohibit specific terms in the debtor's plan. | _____ Yes<br><br>_X___ No | Page ____, ¶ ____ |

| | | |
|---|---|---|
| (12) Provisions establishing that proposing a plan inconsistent with the order constitutes a default. | _____ Yes<br><br>___X__ No | Page ____, ¶ ____ |
| (13) Provisions that waive surcharge under 11 U.S.C. § 506(c). | _____ Yes<br><br>___X__ No | Page ____, ¶ ____ |
| (14) Provisions that address the rights and obligations of guarantors or co-obligors. | _____ Yes<br><br>__X___ No | Page ____, ¶ ____ |
| (15) Provisions that prohibit the debtor from seeking approval to use cash collateral without the secured creditor's consent. | _____ Yes<br><br>__X___ No | Page ____, ¶ ____ |
| (16) Provisions that purport to bind a subsequent trustee. | _____ Yes<br><br>___X__ No | Page ____, ¶ ____ |
| (17) Provisions that obligate the debtor to pay any of a secured creditor's professional fees. | _____ Yes<br><br>___X__ No | Page ____, ¶ ____ |

Dated: January 13, 2017    Respectfully submitted by:

**THE DRAGICH LAW FIRM PLLC**

By: /s/ David G. Dragich
David G. Dragich (P63234)
Amanda Vintevoghel (P76567)
17000 Kercheval Avenue, Suite 210
Grosse Pointe, MI 48230
(313) 886-4550 (Telephone)
ddragich@dragichlaw.com
avintevoghel@dragichlaw.com

Proposed Counsel for Debtor VPH Pharmacy, Inc.

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION - FLINT

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| VPH Pharmacy, Inc. | ) | |
| | ) | Case No. 17-30077 |
| | ) | |
| Debtor. | ) | Hon. Daniel S. Opperman |
| _____/ | | |

**FIRST DAY MOTION OF THE DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING AND USE CASH COLLATERAL, (II) SCHEDULING A FINAL HEARING, AND (III) GRANTING CERTAIN RELATED RELIEF**

VPH Pharmacy, Inc. ("VPH" or the "Debtor") ), through its proposed counsel, hereby move pursuant to sections 105, 361, 362, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Michigan (the "Local Rules") for entry of an interim order, substantially in the form attached hereto as **Exhibit 1** (the "Interim Order") and a final order (the "Final Order," and together with the Interim Order, the "DIP Orders") (i) authorizing the Debtor to obtain post-petition financing and use cash collateral, (ii) scheduling a final hearing, and (iii) granted related relief. In support of this motion, the Debtor relies on the *Affidavit of Gene R. Kohut in Support of Chapter 11 Petition and First Day Motions and Applications* (the "First Day Affidavit")[1], and states as follows:

---

[1] Capitalized terms not herein defined shall have the meanings ascribed to them in the First Day Affidavit.

1

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are sections 105(a), 361, 362, 363 and 364 of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4000-2.

## GENERAL BACKGROUND

3. On the date hereof (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Michigan. The Debtor intends to continue to maintain possession of its property and to manage its business affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. I am advised by the Debtor's counsel that this Court has jurisdiction over this Chapter 11 case pursuant to 28 U.S.C. §§ 157 and 1334 and venue is properly in the United States Bankruptcy Court for the Eastern District of Michigan pursuant to 28 U.S.C. §§ 1408 and 1409.

5. No request for appointment of a chapter 11 trustee or examiner has been made and, as of the date hereof, no official committee has been appointed.

**Current Business Operations of the Debtor**

6. The Debtor is a closed door pharmacy that provides medications and consulting services to approximately 60 different assisted living centers, children's foster care facilities, adult foster care facilities, retirement communities and long term care facilities. For some of these facilities, medications are needed daily. There are approximately 1,500 patients that rely on the

Debtor to timely deliver their medication. Ensuring that its customers receive medication is of the utmost importance for the Debtor's business operations, but more importantly, for the safety of its customer's patients.

7. The Debtor leases the building and property located at 5376 Miller Rd., Swartz Creek, Michigan.

8. As of the Petition Date, the Debtor is owned by Devenkumar C. Patel ("Mr. Patel"). The Debtor was formed in 2005. Mr. Patel is currently serving a prison sentence in West Virginia, and therefore, cannot operate the day to day affairs of the Debtor.

9. Prior to his incarceration, on December 2, 2016, Mr. Patel and his wife, Amee Patel ("Mrs. Patel") executed a *Durable Power of Attorney* ("Power of Attorney").Pursuant to the Power of Attorney, Mrs. Patel has the legal authority to act on behalf of the Debtor. Pursuant to the Power of Attorney, she had the power to "continue operating and managing any business in which [Mr. Patel] now or later own[s] an interest for the period of time and in any manner [she] considers appropriate…." While Mrs. Patel has the legal authority to operate the Debtor, she has not previously managed the daily business of the Debtor.

10. The Debtor has approximately 40 employees at this time.

**Events Leading to the Chapter 11 Bankruptcy**

11. In the three years prior to the Petition Date, VPH averaged about $15 million per year in annual revenue. However, in 2016, as a result of the loss of significant customer contracts, an investigation and subsequent seizure of assets by the Justice Department Drug Enforcement Agent ("DEA"), and other factors, the Debtor's revenue began to decline. On September 22, 2015,

3

the DEA seized certain funds of the Debtor, totaling approximately $242,000, alleging such funds were used or acquired as a result of a violation of the Controlled Substance Act. [2]

12. On September 7, 2016, a judgment was entered against the Debtor, and several other defendants, for $1,278,310.55 (the "Judgment"). *See Howard v. VPH Pharmacy, Inc., et. al.*, Oakland County Circuit Court, Case No. 15-148851-CB. The judgment resulted from litigation relating to Mr. Patel's stock in the Debtor purchased from Vincent Howard ("Mr. Howard"), the former owner of the Debtor and the plaintiff in the litigation.

13. After entry of the Judgment, in December 2016, Mr. Patel began an 18 month prison sentence. Prior to his sentence, Mr. Patel took the necessary steps to sell his and Mrs. Patel's businesses and restructure the family businesses.

14. Mr. Howard began efforts to garnish the Debtor's bank accounts. This garnishment significantly affected the Debtor's cash flow and ability to pay its creditors as its debts became due.

15. Further, on or about December 12, 2016, the Debtor's landlord Saab Resources, Inc. (the "Landlord"), began eviction proceedings against the Debtor. On January 3, 2017, the Landlord filed its *Complaint for Non-Payment of Rent* in the 67th-4th A District Court in Fenton, Michigan (the "Complaint"). The Debtor filed its *Answer to Complaint for Non-Payment of Rent, Affirmative Defenses, and Counter Claim* (the "Answer") on January 9, 2017. In its Answer, the Debtor asserts that it is owed significant damages from the Landlord for failure to make certain repairs as required by the lease. The matter is scheduled for a status hearing on January 17, 2017.

---

[2] However, the Debtor contested such seizures and the investigation is ongoing. The Debtor believes the funds should be returned.

16. Certain of the Debtor's customers are nursing homes in which Mrs. Patel has an ownership interest.

17. Prior to the Petition Date, the Debtor obtained loans from Canalis Medical Pharmacy, LLC and Amee Patel (the "Pre-Petition Lenders") in the amounts of $109,238.35 and $5,000.00, respectively. The Pre-Petition Lenders consent to the relief sought in this Motion.

## **RELIEF REQUESTED**

18. Through this Motion, the Debtor requests that the Court enter the Order, substantially in the form as attached hereto as **Exhibit 1** (the "Interim Order"), seeking the following relief:

    a. Authorizing the Debtor to obtain post-petition super priority financing ("DIP Financing") on an interim basis pursuant to the terms and conditions set forth herein between the Debtor and The Winrose Plus Group Inc. (the "DIP Lender") and in the Interim Order.

    b. Granting the DIP Lender security interests in and liens on all of the DIP Collateral (as defined below) to secure the DIP Financing and all obligations owing and outstanding thereunder, as applicable, and the Interim and Final Orders, as applicable (collectively, the DIP Obligations);

    c. Granting allowed super priority administrative expense claims to the DIP Lender;

    d. Authorizing the Debtor to use Cash Collateral (as defined below) (together with the DIP Financing, the "Post-Petition Financing Arrangement");

    e. Authorizing the Debtors to grant adequate protection to the Pre-Petition Lenders with respect to their secured claims if necessary.

f. Scheduling a hearing (the "Final Hearing"), pursuant to Rule 4001(c)(2) of the Bankruptcy Rules, to consider entry of the Final Order, *inter alia*, approving and authorizing the Post-Petition Financing Arrangement (including, without limitation, the advance of the financing pursuant to the Interim Order) on a final basis.

## BASIS FOR RELIEF

19. The Debtor has an immediate and critical need to obtain post-petition financing under the DIP Financing and to use Cash Collateral in order to pursue its reorganization efforts. The Debtor does not have sufficient available resources or working capital to operate its business in the ordinary course without the financing requested herein. As set forth in more detail in the First Day Affidavit, the Debtor owns and operates a closed door pharmacy that provides medications to approximately 60 different assisted living centers, children's foster care facilities, adult foster care facilities, retirement communities and long term care facilities. For some of these facilities, medications are needed daily. There are about approximately 1,500 patients that rely on the Debtor to timely deliver their medication. Ensuring that its customers receive medication is of the utmost importance for the Debtor's business operations, but more importantly, for the safety if its customer's clients.

20. The Debtor is unable to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, as an administrative expense under Section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority claim pursuant to Section 364(a)(1) of the Bankruptcy Code, without the grant of liens on assets.

21. The Debtor has been unable to obtain funding on terms that are more favorable than offered by the DIP Lender.

6

22.     Without the Post-Petition Financing Arrangement, the Debtor would be unable to purchase the required inventory of medications, and its estate would decrease substantially in value and they would not be able to pursue its reorganization efforts.  The use of Cash Collateral alone would be insufficient.

23.     The DIP Lender has indicated a willingness to provide the Debtor with certain financing, but only in compliance with the terms and conditions set forth in the Interim Order and the Final Order.  The Debtor has concluded, in an exercise of its sound business judgment, that the financing to be provided by the DIP Lender represents the best financing presently available to the Debtor.  These funds will be used to maintain the Debtor's assets and to purchase medication inventory and otherwise fund the expenses of the business.

24.     The Debtor has negotiated the Post-Petition Financing Arrangement in good faith and at arm's length with the DIP Lender.  The Debtor believes that the terms of the Post-Petition Financing Arrangement are fair and reasonable, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

### **SUMMARY OF PRINCIPAL TERMS OF THE DIP FINANCING**

25.     The following is a summary of the terms of the DIP Financing:

<u>Type and Amount</u>:  The Post-Petition Financing will be a multiple-draw loan in the aggregate amount of $150,000.00 ("Maximum Commitment") that shall be available to borrow in accordance with the Budget attached hereto as **Exhibit 2** (the "DIP Loan").  The Debtor may draw loans anytime thereafter, up to the Maximum Commitment.

<u>Purpose</u>:  The DIP Loan will be used in accordance with the Budget for (a) working capital and general corporate purposes of the Debtor, (b) bankruptcy-related costs and expenses, and (c) for any other purpose agreed upon by the DIP Lender and the Debtor.

<u>Budget and</u>   Use of cash shall be subject to a weekly budget for the period commencing

| | |
|---|---|
| Projections: | on the Petition Date and ending on the Closing Date (as defined below), each in the form and substance acceptable to the DIP Lender in its sole discretion (the "Approved Budget"). |

By no later than three (3) business days after the end of the week following the Petition Date, the Debtor shall deliver to the DIP Lender a variance report in form and substance acceptable to the DIP Lender in its discretion (an "Approved Variance Report") showing comparisons of actual results for each line item against such line item in the Approved Budget. Thereafter, the Debtor shall deliver to the DIP Lender by no later than three (3) business days after the close of each weekly period after the Petition Date, an Approved Variance Report for the trailing four (4) week period (or, if fewer than four weeks have lapsed since the Petition Date, then for the trailing one, two or three week period, as applicable).

The Debtor will not make any distribution to or for the benefit of any shareholder or member, or any party acting on the shareholder's behalf, or any payment of any kind to or for the benefit of a shareholder or any party acting on the shareholder's behalf, other than those payments set forth in the Budget.

| | |
|---|---|
| Priority: | The DIP Loan shall be: |

1. Pursuant to Section 364(a)(1) pf the Bankruptcy Code and entitled to superpriority administrative expense claim status in this Chapter 11 case with priority over any and all administrative expenses, whether heretofore or hereafter incurred, of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code and including the proceeds of Avoidance Actions (as defined below) and subject to the entry of the Final Order;

2. Pursuant to Section 364(c)(2) of the Bankruptcy Code, secured by a perfected first-priority lien on the Collateral (as defined below) to the extent that such Collateral is not subject to valid, perfected and non-avoidable liens as of the Petition Date;

3. Pursuant to Section 364(c)(3) of the Bankruptcy Code, secured by a perfected second priority lien on the Collateral, to the extent that such Collateral is subject to valid, perfected and non-avoidable liens in favor of third parties in existence as of the Petition Date or to valid liens in existence as of the Petition Date that are perfected subsequent to such date as permitted by Section 546(b) of the Bankruptcy Code;

8

4. Pursuant to Section 364(d) of the Bankruptcy Code, secured by a perfected security interest and lien granted to the DIP Lender (the "Priming DIP Lien"); and

5. The Priming DIP Lien shall not be subject to being treated *pari passu* with or subordinated to any other liens or security interests (whether currently existing or hereafter created), subject in each case only to permitted exceptions to be expressly agreed upon in writing by the DIP Lender in its discretion or imposed by applicable non-bankruptcy law (collectively, the "Permitted Liens").

<u>DIP Collateral</u>: "Collateral" means, collectively, all now owned or hereafter acquired assets and property of the Debtor and its respective Chapter 11 estate, whether real or personal, tangible or intangible, or otherwise, and any and all proceeds therefore, including, without limiting the generality of the foregoing, all cash, accounts, and accounts receivable.

<u>Cash Collateral</u>: "Cash Collateral" shall mean all cash the Debtor now has, or will hereafter acquire, that is subject to the Pre-Petition Lenders security interest.

<u>Interest</u>: Interest shall accrue at a rate of seven (7) percent per annum.

<u>Maturity Date</u>: The DIP Loan shall mature on the earlies to occur of the following (the "Maturity Date"):

1. the consummation of any sale of the Debtor's business; or

2. the consummation of an alternative lender; or

3. confirmation of a plan of reorganization; or

4. conversion of the case to Chapter 7 of the Bankruptcy code or dismissal

<u>Optional Prepayments</u>: The Debtor may prepay the DIP Loan in whole or in part at any time.

<u>Adequate Protection Payments</u>: The Pre-Petition Lenders do not require adequate protection payments under the Interim Order.

26. The Debtor must continue to retain Gene R. Kohut as chief restructuring officer and Dalto & Associates as financial advisors.

9

17-30077-dof    Doc 5    Filed 01/13/17    Entered 01/13/17 13:05:26    Page 12 of 19

## APPLICABLE AUTHORITY

**A.  The Debtor Should be Permitted to Obtain Post-Petition Financing Pursuant to Sections 364(C) and 364(D)(1) of the Bankruptcy Code.**

27.  Section 364(c) of the Bankruptcy Code requires a finding, made after notice and a hearing, that the debtor seeking post-petition financing on a secured basis cannot "obtain unsecured credit allowable under section 503(b)(1) of the [the Bankruptcy Code] as an administrative expense."  11 U.S.C. § 364(c).  In addition, section 364(d)(1) of the Bankruptcy Code, which governs the incurrence of post-petition debt secured by "priming" liens, provides that the Court, after notice and a hearing, may:

> d)(1) authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
>
> (A) the [debtor] is unable to obtain credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

28.  In evaluating proposed post-petition financing under sections 364(c) and (d) of the Bankruptcy Code, courts perform a qualitative analysis and generally consider similar factors, including whether:

a.  unencumbered credit or alternative financing without superpriority status is available to the debtor;

b.  the credit transactions are necessary to preserve assets of the estate;

c.  the terms of the credit agreement are fair, reasonable, and adequate;

10

d. the proposed financing agreement was negotiated in good faith and at arm's-length and entry thereto is an exercise of sound and reasonable business judgment and in the best interest of the debtors' estate and its creditors; and

e. the proposed financing agreement adequately protects prepetition secured creditors.

*See e.g. In re Aqua Assoc.,* 132 B.R. 192 (Bankr. E.D. Pa. 1991) (applying the first three factors in making a determination under section 364(c)); *In re Crouse Group, Inc.,* 71 B.R. 544 (Bankr. E.D. Pa. 1987) (same); *Bland v. Farmworker Creditors,* 308 B.R. 109, 113-114 (S.D. Ga. 2003) (applying all factors in making a determination under section 364(d)).

29. For the reasons discussed below, the Debtor satisfies the standards required to access post-petition financing on a secured superpriority and priming lien basis under sections 364(c) and 364(d) of the Bankruptcy Code.

**B.     The Debtor was Unable to Obtain Financing on More Favorable Terms.**

30. The Debtor solicited alternative financing proposals prior to the Petition Date. However, the Debtor was unable to procure unsecured financing. The current proposal was on the terms that were most beneficial to the estate. The Debtor believes its efforts to obtain post-petition financing therefore satisfy the standard required under section 364(c) of the Bankruptcy Code. *See e.g. In re Simasko Production Co.,* 47 B.R. 444, 448-9 (D. Colo. 1985) (authorizing interim financing stipulation where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estates); *In re Ames Dept. Stores,* 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to post-petition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Sky Valley, Inc.,* 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) (where few

lenders can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing").

31. Additionally, given the severity of the repercussions if the Debtor does not obtain financing, approximately 1,500 people will not receive their medications, the Debtor does not have an unlimited amount of time to find more favorable terms. *See e.g. In re Snowshoe Co.,* 789 F.2d 1085, 1088 (4th Cir. 1986) (stating that section 364(d) of the of the Bankruptcy Code imposes no duty to seek credit from every possible lender, particularly when time is of the essence to preserve a vulnerable seasonal enterprise").

**C.  The Post-Petition Financing Arrangement is Necessary to Preserve the Assets of the Debtor's estate.**

32. As noted in *supra*, the Debtor is facing liquidity issues and was forced into this Chapter 11 case to preserve the value of its business as well as continue operations. Without the agreement of the DIP Lender to provide the Debtor with financing, the Debtor would be forced to cease operations and 1,500 patients would not have access to their medication. Such repercussions would certainly cause irreparable and immediate harm the Debtor's patients. Also, as the debtor in possession, the Debtor has a fiduciary duty to protect and maximize the assets of its estate. *See In re Mushroom Transp. Co.,* 382 F.3d 325, 339 (3d Cir. 2004).

**D.  The Terms of the Post-Petition Financing Arrangement are Fair, Reasonable and Appropriate Given the Circumstances.**

33. In considering whether the terms of post-petition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender. *In re Farmland Indus., Inc.,* 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *See also In re Ellingsen MacLean Oil Co.,* 65 B,R, 385, 365 (W.D. Mich. 1986) (a debtor may have to enter into hard bargains to acquire funds).

34. The Post-Petition Financing Arrangement was negotiated in good faith and at arm's-length between the Debtor and the DIP Lender. These negotiations resulted in an agreement which will allow the Debtor to continue its operations and either successfully reorganize or complete a sale.

**E.      Entry into the DIP Facility Reflects the Debtor's Sound Business Judgment.**

35. A debtor's decision to enter in a post-petition financing arrangement under section 364 of the Bankruptcy Code is governed by the business judgment standard. *See e.g. In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (financing decisions under section 362 of the Bankruptcy Code must reflect a debtor's business judgment).

36. Bankruptcy Courts generally will defer to a debtor in possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *In re Curlew Valley Assocs.,* 14 B.R. 506, 511-13. (Bankr. D. Utah). The court will generally not second-guess a debtor in possession's business decisions involving a "business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the [Bankruptcy] Code." *Id.* at 513-14.

37. As noted above, the Debtor has exercised sound business judgment in determining that the DIP Facility does satisfy the legal prerequisites to incur debt under section 364 of the Bankruptcy Code on the terms set forth in the DIP Facility. The Debtor believes the DIP Facility provides the best terms that are available under the circumstances.

38. The DIP Loans are essential to enable the Debtor to avoid irreparable harm to the Debtor's business operations, assets and its customers.

13

39. Therefore, pursuant to sections 364(c) and (d)(1) of the Bankruptcy Code, the Debtor respectfully submits that it should be granted authority to enter the DIP Facility and obtain the DIP Loan on the secured and administrative superpriority basis described herein.

**F.    The Debtor is Authorized to Use Cash Collateral.**

40. In addition to the need of the DIP Facility, the Debtor has a critical need for the immediate use of Cash Collateral. The Debtor request use of Cash Collateral to pay present operating expenses, including its medication vendors and payroll. If the Debtor is unable to use Cash Collateral pending the Final Hearing, the Debtor will be unable to effectuate a reorganization or an orderly sale process designed to maximize value.

41. Under section 362(c)(2) of the Bankruptcy Code, the Debtor may not use Cash Collateral without the consent of the Pre-Petition Lenders or authority granted by the Court. The Debtor has the consent of the Pre-Petition Lenders to continue to use cash collateral.

**G.    Interim Approval of the Borrowings Should be Granted.**

42. It is essential that the Debtor immediately receive financing to continue its business operations and stabilize cash flow, which will permit the Debtor to formalize a plan to reorganize or to conduct a going-concern sale. Therefore, the Debtor is seeking interim approval to access up to $150,000 in DIP Loans to meet its working capital needs, including making payroll and paying its medication vendors.

43. The Debtor submits that this Court should grant the Debtor's request for immediate authority to use the Cash Collateral to prevent immediate and irreparable harm to the Debtor's estate pending a final hearing on the Motion pursuant to Bankruptcy Rule 4001(c). The ability of the Debtor to finance its operations and the availability of sufficient working capital and liquidity

14

17-30077-dof    Doc 5    Filed 01/13/17    Entered 01/13/17 13:05:26    Page 17 of 19

through the use of Cash Collateral is vital to the preservation of the Debtor's estate and business. The Debtor, therefore, seeks authority to use Cash Collateral.

44. Bankruptcy Rule 4001(c)(2) governs the procedures for obtaining authorization to obtain post-petition financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14-day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

45. In examining requests for interim relief under this rule, courts apply the same business judgment standard to other business decisions. *See e.g. Ames Dep't Stores,* 115 B.R. at 36; *Simasko,* 47 B.R. at 449. Under this standard, the Debtor's request for entry of the DIP Orders, in the time periods and for the financing amounts requested herein, is appropriate.

46. The Debtor believes that, under the circumstances, the terms and conditions set forth herein are fair and reasonable for the use of Cash Collateral and the approval of the proposed adequate protection.

### **REQUEST FOR A FINAL HEARING**

47. Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable, not in no event later than twenty-days following the entry of the Interim Order, and fix the time and date prior to the final hearing for parties to file objections to the Motion.

### **WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)**

48. To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

49.     Notice of this Motion has been given to (i) the United States Trustee for the Eastern District of Michigan (the "US Trustee"), (ii) counsel for judgment creditor Mr. Howard, (iii) the holders of the twenty (20) largest unsecured claims against the Debtor's estate (the "20 Largest Unsecured Creditors"), (iv) counsel to the Pre-Petition Lenders, and (v) all parties identified in Bankruptcy Rule 4001(d) (collectively, the "Noticed Parties").

## NO PRIOR REQUEST

50.     No prior request for the relief sought in this Motion has been made to this Court or any other Court.

## CONCLUSION

WHEREFORE, the Debtor requests that this Court enter an Interim Order substantially in the form attached hereto as **Exhibit 1** and grant such other and further relief as the Court may deem proper.

Dated: January 13, 2017          Respectfully submitted by:

**THE DRAGICH LAW FIRM PLLC**

By: /s/ David G. Dragich
David G. Dragich (P63234)
Amanda Vintevoghel (P76567)
17000 Kercheval Avenue, Suite 210
Grosse Pointe, MI 48230
(313) 886-4550 (Telephone)
ddragich@dragichlaw.com
avintevoghel@dragichlaw.com

Proposed Counsel for Debtor VPH Pharmacy, Inc.