UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

In re: )
) Chapter 11
VPH Pharmacy, Inc. )
) Case No. 17-30077
)
Debtor. ) Hon. Daniel S. Opperman
_____/

## AFFIDAVIT OF GENE R. KOHUT IN SUPPORT OF CHAPTER 11 PETITION AND FIRST DAY PLEADINGS

I, Gene R. Kohut, hereby declare (the "Affidavit"), pursuant to 28 U.S.C. 1746, as follows:

1. I am the Chief Restructuring Officer of VPH Pharmacy, Inc. (the "Debtor"). I was retained in that capacity on January 6, 2017, prior to the Petition Date. I am generally familiar with the day-to-day operations, business affairs, and books and records of the Debtor. Except as otherwise noted, I have personal knowledge of the matters set forth in this Affidavit and, if called as a witness, I could testify competently to such matters.

2. On the date hereof (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Michigan. The Debtor intends to continue to maintain possession of its property and to manage its business affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. I am advised by the Debtor's counsel that this Court has jurisdiction over this Chapter 11 case pursuant to 28 U.S.C. §§ 157 and 1334 and venue is properly in the United States Bankruptcy Court for the Eastern District of Michigan pursuant to 28 U.S.C. §§ 1408 and 1409.

4. No request for appointment of a chapter 11 trustee or examiner has been made and, as of the date hereof, no official committee has been appointed.

1

5. On or about January 6, 2017, the Debtor retained Dalto & Associates as Financial Advisor (the "Financial Advisor") to the Debtor. The Financial Advisor has kept me apprised of the Debtor's financial situation.

6. I submit this Affidavit in support of the Debtor's chapter 11 petition, DIP Motion and Wages Motion (the "First Day Pleadings"). The First Day Pleadings seek relief aimed at, among other things, maintaining the business operations of the Debtor so that the highest value can be received from a going-concern sale process or a restructuring. Part I of this Affidavit describes the Debtor's business and the circumstances surrounding the commencement of its Chapter 11 case. Part II of this Affidavit sets forth the relevant facts in support of the DIP Motion also filed concurrently herewith. Part III of this Affidavit sets forth the relevant facts in support of the Wages Motion. Finally, Part IV of the Affidavit summarizes the Debtor's objectives in this chapter 11 case.

## PART I. BACKGROUND

### Current Business Operations of the Debtor

7. The Debtor is a closed door pharmacy that provides medications and consulting services to approximately 60 different assisted living centers, children's foster care facilities, adult foster care facilities, retirement communities and long term care facilities. For some of these facilities, medications are needed daily. There are approximately 1,500 patients that rely on the Debtor to timely deliver their medication. Ensuring that its customers receive medication is of the utmost importance for the Debtor's business operations, but more importantly, for the safety of its customer's patients.

8. The Debtor leases the building and property located at 5376 Miller Rd., Swartz Creek, Michigan.

9. As of the Petition Date, the Debtor is owned by Devenkumar C. Patel ("Mr. Patel"). The Debtor was formed in 2005. Mr. Patel is currently serving a prison sentence in West Virginia, and therefore, cannot operate the day to day affairs of the Debtor.

10. Prior to his incarceration, on December 2, 2016, Mr. Patel and his wife, Amee Patel ("Mrs. Patel") executed a *Durable Power of Attorney* ("Power of Attorney"), attached hereto as **Exhibit A**. Pursuant to the Power of Attorney, Mrs. Patel has the legal authority to act on behalf of the Debtor. Pursuant to the Power of Attorney, she had the power to "continue operating and managing any business in which [Mr. Patel] now or later own[s] an interest for the period of time and in any manner [she] considers appropriate...." *See* **Exhibit A**, ¶ 3.07. While Mrs. Patel has the legal authority to operate the Debtor, she has not previously managed the daily business of the Debtor.

11. The Debtor has approximately 40 employees at this time.

12. As of the Petition Date, the Debtor had two lenders, Canalis Medical Pharmacy, LLC and Amee Patel.

**Events Leading to the Chapter 11 Bankruptcy**

13. In the three years prior to the Petition Date, VPH averaged about $15 million per year in annual revenue. However, in 2016, as a result of the loss of significant customer contracts, an investigation and subsequent seizure of assets by the Justice Department Drug Enforcement Agent ("DEA"), and other factors, the Debtor's revenue began to decline. On September 22, 2015, the DEA seized certain funds of the Debtor, totaling approximately $242,000, alleging such funds were used or acquired as a result of a violation of the Controlled Substance Act.[1]

---

[1] However, the Debtor contested such seizures and the investigation is ongoing. The Debtor believes the funds should be returned.

14. On September 7, 2016, a judgment was entered against the Debtor, and several other defendants, for $1,278,310.55 (the "Judgment"). *See Howard v. VPH Pharmacy, Inc., et. al.*, Oakland County Circuit Court, Case No. 15-148851-CB. The judgment resulted from litigation relating to Mr. Patel's stock in the Debtor purchased from Vincent Howard ("Mr. Howard"), the former owner of the Debtor and the plaintiff in the litigation.

15. After entry of the Judgment, in December 2016, Mr. Patel began an 18 month prison sentence. Prior to his sentence, Mr. Patel took the necessary steps to sell his and Mrs. Patel's businesses and restructure the family businesses.

16. Mr. Howard began efforts to garnish the Debtor's bank accounts. This garnishment significantly affected the Debtor's cash flow and ability to pay its creditors as its debts became due.

17. Further, on or about December 12, 2016, the Debtor's landlord Saab Resources, Inc. (the "Landlord"), began eviction proceedings against the Debtor. On January 3, 2017, the Landlord filed its *Complaint for Non-Payment of Rent* in the 67th-4th A District Court in Fenton, Michigan (the "Complaint"). The Debtor filed its *Answer to Complaint for Non-Payment of Rent, Affirmative Defenses, and Counter Claim* (the "Answer") on January 9, 2017. In its Answer, the Debtor asserts that it is owed significant damages from the Landlord for failure to make certain repairs as required by the lease. The matter is scheduled for a status hearing on January 17, 2017.

18. Certain of the Debtor's customers are nursing homes in which Mrs. Patel has an ownership interest.

## PART II. DIP MOTION

19. Contemporaneously herewith, the Debtor is filing its *Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing and Use Cash*

*Collateral, (II) Scheduling a Final Hearing, and (III) Granting Certain Related Relief.* In the DIP Motion, the Debtor is seeking this Court's approval of a post-petition super priority financing agreement and its proposed budget. I am familiar with the relief requested in the DIP Motion and attest to the truth of the facts set forth therein. Moreover, I believe that the relief sought therein is in the best interests of the estate because it will permit the Debtor to continue its ongoing business operations and preserve the business's value for a going-concern sale or reorganization.

## PART III – WAGES MOTION

20. Also contemporaneously with the DIP Motion, the Debtor is filing its *Motion for an Order (A) Authorizing the Debtor (I) To Pay Certain Prepetition Employee Obligations and Related Claims and (II) Continue to Provide Employee Benefits in the Ordinary Course of Business, and (III) Granting Other Related Relief.* In the Wages Motion, the Debtor is seeking an order authorizing the Debtor to pay or otherwise honor all payment obligations to its employees that accrued prior to the Petition Date and to continue pay all compensation obligations, including (i) wages, salaries and other compensation, (ii) federal and state withholding taxes and other amounts withheld or deducted, and (iii) vacation pay. I am familiar with the relief requested in the Wages Motion and attest to the truth of the facts set forth therein. I believe the relief sought therein is in the best interests of the estate because it will allow the Debtor to retain employees to ensure that the business continues to operate efficiently.

## PART IV. OBJECTIVES

21. The Debtor intends to maximize the value of its respective assets for the benefit of all stakeholders. The Debtor is pursuing a reorganization or sale of their business and assets in an effort to pay their debts and to ensure the on-going operation of the Debtor.

5

17-30077-dof    Doc 9    Filed 01/13/17    Entered 01/13/17 13:37:31    Page 5 of 7

I SWEAR UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWELDGE.

_____
Gene R. Kohut, Chief Restructuring Officer,
VPH Pharmacy, Inc.

*Angela Accavitti* (signature)

**ANGELA ACCAVITTI**
Notary Public - Michigan
Macomb County
My Comm. Expires 3/10/2022

Acting in Wayne County

Dated: January 13, 2017

Respectfully submitted by:

**THE DRAGICH LAW FIRM PLLC**

By: /s/ David G. Dragich

David G. Dragich (P63234)
Amanda Vintevoghel (P76567)
17000 Kercheval Avenue, Suite 210
Grosse Pointe, MI 48230
(313) 886-4550 (Telephone)
ddragich@dragichlaw.com
avintevoghel@dragichlaw.com

Proposed Counsel for Debtor VPH Pharmacy, Inc.