UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

VPH Pharmacy, Inc.

    Debtor.

_____/

Case No. 17-30077
Hon. Daniel S. Opperman
Chapter 11

# VINCENT P. HOWARD'S PRELIMINARY OBJECTION TO DEBTOR'S FIRST DAY MOTION FOR USE OF CASH COLLATERAL AND AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING

## I. INTRODUCTION

VPH Pharmacy, Inc.("VPH") fails to list Vincent P. Howard ("Howard") as a secured creditor and wholly ignores his secured status as to the collateral of VPH. This legal position is entirely incorrect, and VPH is in clear violation of the Bankruptcy Code's prohibition against the use of cash collateral without consent or court order. Therefore, in the absence of adequate protection in the form of cash payments and replacement liens provided to Howard, the motion must be denied.

Howard further objects to the DIP financing for failure to provide adequate protection and assigning as collateral any proceeds from avoidance actions.

## II. RELEVANT FACTS

VPH is a "closed door" pharmacy founded by Howard in 2005, which services institutional customers such as nursing homes, long term care and assisted-living facilities. Pursuant to an option agreement dated September 9, 2009, Howard agreed to permit Deven Patel to operate VPH pursuant to a management agreement with the option to later purchase VPH under agreed upon terms,

1

including as stated in certain associated and agreed upon Promissory Note, Pledge Agreement, and Security Agreement. Deven Patel exercised the option to purchase VPH effective June 1, 2010. Deven Patel and VPH executed a security agreement agreeing that all of "VPH's accounts and inventory would collaterize Patel's obligation under the promissory note (Exhibit A). Howard perfected his security interest in the collateral by filing a UCC-1 financing statement (Exhibit B).

VPH and Patel breached its agreement with Howard and Howard engaged in litigation with VPH, Deven Patel, Shobhana Patel, and Nandan Patel, in the Oakland County Circuit Court. As part of this lawsuit, the court appointed UHY Advisors, a CPA firm with an expertise in forensic accounting, "to serve as the Forensic Accountants, to receive complete and have unfettered access to all of the business records, accounting records, financial statement, bank records, referral source information, any other relevant records and the computer systems of VPH Pharmacy, Inc. free from interference from or obstruction by either party," and to "perform a forensic accounting of VPH Pharmacy, Inc. focused on 1) any and all shareholder transactions, including monies paid to and received from shareholders of VPH; and 2) any and all transactions between VPH and Patel family related entities as determined by UHY for the period January 2013 forward."

The Oakland County Circuit Court adopted UHY's report and admitted it into evidence. **The report shows, among other things, that the VPH transferred millions of dollars in cash and/or property and obligation by and between various other entities owned or controlled by Deven Patel or his insiders.**

Howard obtained Partial summary Disposition in the lawsuit against VP, Deven Patel, Shabhana Patel, and Nandan Patel by order dated September 7, 2016, and the Court entered judgement for $1,278,310.55 together with additional interest and attorney fees.

2

17-30077-dof    Doc 23    Filed 01/16/17    Entered 01/16/17 19:13:56    Page 2 of 17

## III. LAW AND ARGUMENT

### A. Cash Collateral

1. Adequate Protection

"Cash collateral" is defined in § 363 of the Bankruptcy Code as "cash, negotiable instruments deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property. Pursuant to Bankruptcy Code § 363, a debtor, as well as any other entity or individual, is prohibited from using any of the cash collateral, unless such debtor meets its burden of providing adequate protection to the secured creditor pursuant to an order entered by the bankruptcy court after notice and a hearing. *See 11 U.S.C. §§ 363(e) and 363(p)*. A debtor in possession may only use cash collateral, even in the ordinary course of business, if it has the consent of the creditor or court authorization. *In re Coventry Commons Associates*, 134 B.R. 606, 607 (Bankr. E.D. Mich. 1991)(citing 11 U.S.C. § 363(c)(2)). If the court authorizes the use of cash collateral, that use must be conditioned as necessary to provide adequate protection of the creditor's interest in the collateral. *Id.*; see also *11 U.S.C. § 363(e)*.

The burden is on the debtor in possession to show adequate protection. *Id.*; see also *11 U.S.C. § 363(p)(1)* Howard is a secured creditor as illustrated from an executed security agreement and filed UCC-1 financing statement. Therefore, Howard is a secured creditor in all inventory and accounts of VPH. The use of any inventory, receivables, and cash deposit accounts without consent violates the strict prohibition of use of cash collateral without consent or a court order.

The sale of any inventory constitutes cash collateral of which Howard has a security interest. Section 552(a) provides the general rule that "property acquired by the estate or by the debtor after

3

the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." *11 U.S.C. § 552(a)*. Section 552(b), however, contains the sole exception to this rule: [I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise. [*11 U.S.C. § 552(b)(1)*].

Therefore, in order for a pre-petition security interest to attach to a debtor's after-acquired cash, making it "cash collateral," a secured creditor must show that the security agreement attaches to the proceeds of the collateral covered by the agreement and that the proceeds claimed as cash collateral are in fact "proceeds . . . of pre-petition property subject to the lien."

Further, VPH proposes to pay $22,500.00 per week to professional fees[1] as outlined in the attached budget; without the ability to review the bankruptcy schedules and statement of financial

---

[1] According to Debtor's budget, professional fees consist of payment to Debtor's counsel, Debtor's Chief Restructuring Officer (CRO) and Debtor's financial advisor. Pursuant to the engagement letters attached to Debtor's Applications to Appoint Gene Kohut as CRO and Dalto Consulting, Inc. as financial advisor, **each of these professionals were also paid $15,000.00 each ($30,000 total) on January 5, 2017 and January 4, 2017, respectively – only *one week prior* to the filing of the instant Chapter 11 bankruptcy proceeding.** Debtor's Applications recognize that both retainers were fully applied prior to the petition date. Debtor is quickly depleting funds in favor of professional fees that could be used to operate the business and for working capital. At this rate, Howard has serious concerns as to the viability of VPH and its ability to sustain itself in a Chapter 11 bankruptcy.

4

affairs regarding the complexity of this case it is difficult to ascertain if this is reasonable. However, the payment of professionals out of the cash collateral of Howard is not justifiable without payment of adequate protection.

2. Replacement Liens

Under the provisions of subsection (1) and (2) of § 361 adequate protection may be provided by either making "periodic cash payments" or by providing "an additional or replacement lien" to the extent the stay of § 362 "results in a decrease in value of such property.". It thus appears from the language of § 361(1) and (2) that the scope of "adequate protection" should be delimited to protecting the secured claim holder from a diminution in the value of the collateral securing the debt. See *In re Pine Lake Village Apartment Co.*, 19 B.R. 819, 8 B.C.D. 1402 (Bkrtcy.S.D.N.Y.1982) [cited by *In re Shriver*, 33 B.R. 176, 180 (N.D. Ohio 1983). Stated differently, under § 361, adequate protection may be provided to a secured creditor: by "requiring the trustee to make a cash payment or periodic cash payments" to the creditor, by granting the creditor "an additional or replacement lien," or by "granting such other relief, other than entitling [the creditor] to compensation allowable under section 503(b)(1) ... as an administrative expense, as will result in the realization by such [creditor] of the indubitable equivalent of such [creditor's] interest in such property." 11 U.S.C. § 361 (emphasis added). *In re. Gasel Transp. Lines, Inc.*, 326 B.R. 683, 692 (6th. Cir.2005).

The Debtor is utilizing Howard's cash collateral without his consent or court order. At a minimum, Howard is entitled to replacement liens on the Debtor's inventory and accounts, including the use of VPH's inventory, receivables, and cash deposit accounts. Therefore, Howard requests that this Court deny the Debtor's Motion and requests that the Court order the Debtor to stop utilizing Howard's cash collateral until such time and as a necessary and proper cash collateral order can be

5

agreed to by the parties. Debtor seeks a replacement lien that encompasses the same collateral (accounts and inventory) that existed as of the petition date.

**B. DIP Financing**

Postpetition financing should only be approved if its terms are not overreaching or excessively favorable to the proposed lender. See, e.g., *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40-41 (Bankr. S.D.N.Y. 1990); *In re Tenney Village Co., Inc.*, 104 B.R. 562, 568 (Bankr. D.N.H. 1989). Thus, the Court should not approve the proposed DIP Facility if it is not in the best interests of VPH's general creditor body, but instead only favors a particular creditor to the detriment of other parties in interest. See *A&K Endowment, Inc. v. Gen. Growth Props., Inc. (In re Gen. Growth Props., Inc.)*, 423 B.R. 716, 725 (S.D.N.Y. 2010)(quoting *In re Ames*, 115 B.R. at 39 ("proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate.")).

The DIP Lender cannot and should not be granted liens or superpriority claims in VPH's avoidance actions or claims, or in the proceeds of such avoidance actions or claims. Avoidance actions are not a debtor's property, but rather rights that may be exercised to benefit a debtor's creditors. See, e.g., *Webster v. Nagyunyom (In re Yelverton)*, No. 09-10048, 2011 WL 6257553, at *1 (Bankr. D.D.C. Dec. 15, 2011) ("[T]he trustee's avoidance claims themselves are not property of the estate."); *In re Novak*, 383 B.R. 660, 671 n.16 (Bankr. W.D. Mich. 2008) ("Avoidance actions, though, are not property of the estate . . . ."); see Official Comm. of Unsecured Creditors of *Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 243-45 (3d Cir. 2000)(state law fraudulent transfer claim is not an asset of the debtor); *In re Sapolin Paints, Inc.*, 11 B.R. 930, 937 (Bankr. E.D.N.Y. 1981)(recognizing "the well-settled principle that neither a trustee . . . nor a

17-30077-dof    Doc 23    Filed 01/16/17    Entered 01/16/17 19:13:56    Page 6 of 17

debtor-in-possession, can assign, sell, or otherwise transfer the right to maintain a suit to avoid preference").

Howard is not adequately protected from the DIP loan; since VPH has not provided any valuation of its collateral, it is impossible to ascertain the position of the secured creditors in this case.

Based on telephone discussions with Debtor's counsel, Howard's counsel has learned that the DIP Lender is an entity owned solely by Amee Patel (wife of Devon Patel as well as Power of Attorney of Debtor). Upon information and belief, the entity was formed for the sole purpose of acting as the financing arm for Debtor. It is Howard's understanding that the DIP Lender obtained monies from a collection of other insider family members of Devon and Amee Patel. As such, Howard questions the veracity of Debtor's assertion that "...the proposed financing agreement was negotiated in good faith and at arm's-length and entry thereto is an exercise of sound and reasonable business judgment and in the best interest of the debtors' estate and its creditors."[2] See Motion, p. 11, ¶28(d).

Based on Debtor's recent history, Howard also has serious concerns regarding the viability and good faith nature of its attempts to obtain financing. The Motion states that the Debtor obtained loans from pre-petition lenders, Canalis Medical Pharmacy, LLC and Amee Patel[3] in the amounts

---

[2] Contrary to Debtor's assertions, the DIP financing is not being done at arm's length as the monies are being funded by insiders. Further, Debtor has provided no proof that it has applied for any type of alternative financing with any other lenders. Howard further objects to any superpriority lien by the DIP Lender attaching to post petition collateral on the $150,000.00 loan. Any such superpriority lien by insider family members would be done at the expense of other perfected secured creditors holding interests superior in priority.

[3] While Ms. Patel is an insider, Debtor provides no background as to Canalis Medical Pharmacy, LLC and questions whether the entity was either formed or controlled by any

of $109,238.35 and $5,000.00 respectively. See p. 2, ¶4. Accordingly, Howard questions the following: 1) purpose and use of the pre-petition monies; 2) time period when pre-petition loans were taken out; 3) likelihood that the loan from the instant DIP Lender will be utilized more effectively than the monies received from the pre-petition lenders.

Since Howard and his professionals have had only one business day to evaluate the DIP Financing Motion and Cash Collateral motion, they have identified numerous actual and potential concerns regarding the motion. Accordingly, Howard reserves all of its rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Preliminary Objection, to seek discovery, and to raise additional objections in connection with the hearings on the DIP Financing Motion and Cash Collateral Motion.

**Wherefore,** Howard prays that this Honorable Court deny the relief requested.

GOLDSTEIN, BERSHAD,& FRIED, P.C.

By: /s/ Scott M. Kwiatkowski
    Scott M. Kwiatkowski (P67871)
    Aaron J. Scheinfield (P67495)
    Attorneys for Vincent P. Howard
    4000 Town Center, Suite 1200
    Southfield, Michigan 48075
    (248) 355-5300
    scott@bk-lawyer.net
    aaron@bk-lawyer.net

Dated: January 16, 2017

---

other insider family members.

SECURITY AGREEMENT

This Agreement is made effective as of ___June 1___, 2010 (the "Effective Date"), between Vincent P. Howard ("Secured Party") and Deven Patel individually ("Debtor") and VPH Pharmacy, Inc. (the "Corporation"), (collectively, the Parties).

RECITALS

A. Secured Party has agreed to extend credit to Debtor, as set forth within a promissory note (the "Note"), issued pursuant to an Option Agreement to Purchase Stock (the "Agreement") requiring Debtor grant a security interest in certain collateral of the Corporation as security for the payment of the Note.

B. Debtor has agreed to cause Corporation to grant a security interest in certain assets of the Corporation as security for payment of the Note.

The Parties agree as follows:

1. **Definitions**

As used in this Security Agreement, the following definitions (in addition to other terms and provisions set forth in Article IX of the Michigan Uniform Commercial Code, MCL 440.9101 et seq.) shall apply:

1.1 **Collateral.** The Collateral shall consist of all of the Corporation's accounts and inventory, including all inventory repossessed or returned. As used in this Security Agreement, Inventory includes goods held for sale. The accounts and inventory shall be collectively the "Collateral".

1.2 **Corporation's Address:** 5376 Miller Road, Swartz Creek, MI 48473.

1.3 **Note.** This Security Agreement secures the promissory note executed in connection with the extension of credit by Secured Party to Debtor in the principal amount of $1,642,500 (the "Note"), which Debtor acknowledges and confirms is owing to Secured Party without any setoff, counterclaim, or deduction of any kind (all of which Debtor agrees not to assert and all of which are waived by Debtor).

1.4 **Term.** A period of time commencing on the date of this Agreement and terminating on the Termination Date.

# EXHIBIT A

1.5 **Termination Date.** The date when the Note is paid in full.

1.6 **UCC.** Any term used in the Uniform Commercial Code as now in effect as of the date of this Agreement in the State of Michigan (UCC) and not defined in this Security Agreement has the meaning given to the term in the UCC.

2. **Grant of Security Interest.** As security for the payment or performance of the Note, the Corporation grants a Security Interest in the Collateral to Secured Party.

3. **Perfection of Security Interests**

   3.1. **Filing of Financing Statement**

   A. Corporation authorizes Secured Party to file a financing statement (the "Financing Statement") describing the Collateral.

   B. Secured Party is authorized to seek and receive prior to the Note's effective date an official report from the Michigan Secretary of State (the SOS Reports) indicating that Secured Party's security interest is prior to all other security interests or other interests reflected in the report.

   3.2. **Possession**

   A. Corporation shall have possession of the Collateral.

   B. Whenever the Collateral is in the possession of a third party, Corporation will join with Secured Party in notifying the third party of Secured Party's security interest and obtaining an acknowledgment from the third party that the third party is holding the Collateral for the benefit of Secured Party.

4. **Post-Effective Date Covenants and Rights Concerning the Collateral**

   4.1 **Inspection.** Secured party may inspect any Collateral at any time on reasonable notice.

   4.2 **Secured Party's Collection Rights.** Secured Party shall have the right at any time to enforce Corporation's rights against the account debtors.

   4.3 **No Disposition of Collateral.** Except as expressly set forth in this Agreement, Secured Party does not authorize, and Corporation shall not grant any other security interest in any of the Collateral.

2

4.4 **Inventory.** Corporation has the power to sell Corporation's Inventory in the ordinary course of its business, provided that Debtor is not in default. In addition, the Parties agree as follows:

    A. A sale of Corporation's Inventory not in the ordinary course of business shall constitute a default;

    B. The interest of Secured Party shall continue in all proceeds of sales and all dispositions of the Inventory; and

    C. If Corporation desires to grant a purchase money security interest in any Inventory (forming a part of the Collateral) to a party other than Secured Party (Third Party), Corporation shall (1) give prior written notice thereof to Secured Party, (2) obtain the prior written consent of Secured Party, and (3) require Third Party to give written notice to Secured Party in the manner required by law.

    D. Although Secured Party has a security interest in all of Corporation's existing and future Inventory, inclusive of proceeds thereof, together with other individual items constituting the Collateral, as a minimum security under this Agreement, Debtor will at all times maintain Inventory with a value based on cost of not less than four hundred thousand ($400,000.00) dollars.

5. **Covenants, Warranties, and Representations of Corporation.** Corporation, as an inducement to Secured Party to extend credit to Debtor, covenants, represents, and warrants to Secured Party the following:

    5.1 **Title to and transfer of Collateral.** Corporation has rights in or the power to transfer the Collateral and its title to the Collateral free of all adverse claims, liens, security interests, and restrictions on transfer or pledge except as created by this Security Agreement.

    5.2 **Location of Collateral.** Except as set forth in this Security Agreement, Debtor will maintain the Collateral at and will not remove the Collateral from Corporation's Address without the prior written consent of Secured Party. Corporation will promptly notify Secured Party in writing of any change in the location of any place of business or establishment of any new place of business of Corporation.

    5.3 **Organization and Name.** Corporation is duly organized and operating a business under the laws of the State of Michigan; Corporation's exact legal name is as set forth in this Agreement; and, further, until the Obligations are paid in full, Corporation shall:

3

A. Preserve its existence in good standing and not, in one transaction or a series of related transactions, merge into or consolidate with any other entity, or sell all or substantially all of Debtor's assets;

B. Not change its name without providing Secured Party with 30 days' prior written notice; and

C. Not change its location as that term is defined in UCC 9-307 (MCL 440.9307).

5.4 **Use.** The Collateral will be used primarily for Corporation's business.

5.5 **Records.** Corporation will at all times during this Agreement keep accurate and complete records of the Collateral and will, at any time at Secured Party's request, deliver to Secured Party a schedule specifically identifying all of the Collateral.

5.6 **Taxes and charges.** Corporation will promptly pay when due all taxes, assessments, or other charges lawfully levied or assessed on the Collateral before they become delinquent and penalties accrue, except to the extent that they are being contested in good faith by appropriate proceedings, but only after written notice is given by Debtor to Secured Party.

5.6 **Insurance.** Corporation will keep the Collateral continuously insured with insurance carriers in amounts and against risks that shall be reasonably satisfactory to Secured Party, with the loss payable clause in favor of Secured Party.

6. **Events of Default.** The occurrence of any of the following shall, at the option of Secured Party, be an Event of Default:

A. Any default, any act or omission that constitutes a default described in the Note or this Security Agreement or the incorrectness of any representation or warranty contained in, this Security Agreement, or the Pledge Agreement between Debtor and Secured Party, or in any of the other Obligations;

B. Transfer or disposition of any of the Collateral, except as expressly permitted by this Security Agreement;

C. Attachment, execution, or levy on any of the Collateral;

D. Debtor or Corporation voluntarily or involuntarily becoming subject to any proceeding under (i) the Bankruptcy Code or (ii) any similar remedy under state statutory or common law;

4

E. Secured Party receiving at any time following the Effective Date an SOS Report indicating that Secured Party's security interest is not prior to all other security interests or other interests reflected in the report.

7. **Default Costs.** Should an Event of Default occur, Debtor will pay to Secured Party all costs reasonably incurred by the Secured Party for the purpose of enforcing its rights hereunder, including:

   A. Costs of foreclosure; and
   B. A reasonable fee for the services of attorneys employed by Secured Party for any purpose related to this Security Agreement or the Note, including consultation, drafting documents, sending notices, or instituting, prosecuting, or defending litigation or arbitration.

8. **Remedies Upon Default**

   8.1 **General.** Upon any Event of Default, Secured Party may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any Obligations then owing, whether by acceleration or otherwise.

   8.2 **Remedies.** Upon any Event of Default, Secured Party shall have the right to pursue any of the following remedies separately, successively, or simultaneously:

   A. File suit and obtain judgment and, in conjunction with any action, Secured Party may seek any ancillary remedies provided by law, including levy of attachment and garnishment.

   B. Take possession of any Collateral without demand and without legal process. Upon Secured Party's demand, Corporation will assemble and make the Collateral available to Secured Party as the Secured Party may direct. Corporation grants to Secured Party the right, for this purpose, to enter into or on any premises where Collateral may be located.

   C. Without taking possession, sell, lease, or otherwise dispose of the Collateral at public or private sale in accordance with the UCC.

9. **Foreclosure Procedures**

   9.1 **No Waiver.** No delay or omission by Secured Party to exercise any right or remedy accruing upon any Event of Default shall (a) impair any right or remedy, (b) waive any default or operate as an acquiescence to the Event of Default, or (c) affect any subsequent default of the same or of a different nature.

5

9.2    **Notices Regarding Sale.** Secured Party shall give Debtor and Corporation such notice of any private or public sale as may be required by the UCC.

9.3    **Condition of Collateral.** Secured Party has no obligation to clean-up or otherwise prepare the Collateral for sale.

9.4    **No Obligation to Pursue Others.** Secured Party has no obligation to attempt to satisfy the amount due pursuant to the Note from any person liable to Corporation.

9.5    **Compliance With Other Laws.** Secured Party may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral and compliance will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral.

9.6    **Warranties.** Secured Party may sell the Collateral without giving any warranties as to the Collateral. Secured Party may specifically disclaim any warranties of title or the like. This procedure will not be considered adversely to affect the commercial reasonableness of any sale or other disposition of the Collateral.

10.    **Miscellaneous**

10.1    **Assignment**

A.    This Security Agreement shall bind and shall inure to the benefit of the heirs, and personal representatives of Secured Party and Debtor and the successors and assigns of the Corporation.

B.    Secured Party does not consent to any assignment by Debtor or Corporation except as expressly provided in this Security Agreement.

C.    Secured Party may assign his rights and interests under this Security Agreement. If an assignment is made, Corporation shall render performance under this Security Agreement to the assignee. Debtor and Corporation will waive and will not assert against any assignee any claims, defenses, or setoffs which Debtor or Corporation could assert against Secured Party except defenses which cannot be waived.

10.2    **Severability.** Should any provision of this Security Agreement be found to be void, invalid, or unenforceable by a court or panel of arbitrators of competent jurisdiction, that finding shall only affect the provisions found to be void, invalid, or unenforceable and shall not affect the remaining provisions of this Security Agreement.

6

10.3 **Notices.** Any notices required by this Security Agreement shall be deemed to be delivered when a record has been either (a) deposited in any United States postal box if postage is prepaid and the notice properly addressed to the intended recipient, (b) received by facsimile transmission, (c) received through the Internet, or (d) when personally delivered.

10.4 **Headings.** Section headings used in this Security Agreement are for convenience only. They are not a part of this Security Agreement and shall not be used in construing it.

10.5 **Governing Law.** This Security Agreement is being executed and delivered and is intended to be performed in the State of Michigan and shall be construed and enforced in accordance with the laws of the State of Michigan.

10.6 **Rules of Construction**

A. No reference to "proceeds" in this Security Agreement authorizes any sale, transfer, or other disposition of the Collateral by the Debtor;

B. "Includes" and "including" are not limiting;

C. "Or" is not exclusive; and

D. "All" includes "any" and "any" includes "all."

10.7 **Integration and Modifications**

A. This Security Agreement is the entire agreement of the Corporation and Secured Party concerning its subject matter; and

B. Any modification to this Security Agreement must be made in writing and signed by the Party adversely affected.

10.8 **Waiver.** Any Party to this Security Agreement may waive the enforcement of any provision to the extent the provision is for its benefit.

10.9 **Further Assurances.** Debtor and Corporation shall execute any further documents, and to take any further actions, reasonably requested by Secured Party to evidence or perfect the security interest granted in this Agreement, to maintain the first priority of the security interests, or to effectuate the rights granted to Secured Party in this Agreement.

[Signatures on following page]

7

The Parties have signed this Security Agreement on the dates set forth herein, to be effective as of the Effective Date listed on the first page.

**DEBTOR**

_____
DEVEN PATEL

**SECURED PARTY**

_____
VINCENT P. HOWARD

**CORPORATION**

VPH PHARMACY, INC.

By: _____

Its: _President_

858861.03/11617-001 (June 24, 2010)

8

Michigan Department of State - Uniform Commercial Code

Document Number:
**2015145564-1**

Filing Date and Time:
10/19/2015 5:29:32 PM

*(This document was filed electronically.)*

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Shelly Rayment

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Hertz Schram PC
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME: Patel | FIRST PERSONAL NAME: Deven | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS: 5376 Miller Road | CITY: Swartz Creek | STATE: MI  POSTAL CODE: 48473 | COUNTRY: USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b)

| 2a. ORGANIZATION'S NAME: VPH Pharmacy, Inc. | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS: 5376 Miller Road | CITY: Swartz Creek | STATE: MI  POSTAL CODE: 48473 | COUNTRY: USA |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME: Howard | FIRST PERSONAL NAME: Vincent | ADDITIONAL NAME(S)/INITIAL(S): P | SUFFIX |
| 3c. MAILING ADDRESS: 1739 John Paul Court | CITY: Oxford | STATE: MI  POSTAL CODE: 48371 | COUNTRY: USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
All of the accounts and inventory, including all inventory repossessed or returned of VPH Pharmacy, Inc., a Michigan corporation.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor Is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)   International Association of Commercial Administrators (IACA)

EXHIBIT B