UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

VPH PHARMACY, INC.,　　　　　　　　　　　Case No. 17-30077-dof
　　　　Debtor.　　　　　　　　　　　　　　　Chapter 7 Proceeding
　　　　　　　　　　　　　　　　　　　　　　Hon. Daniel S. Opperman
_____/

OPINION GRANTING MOTION OF H.D. SMITH, LLC FOR ALLOWANCE AND
PAYMENT OF SECTION 503(b)(9) ADMINISTRATIVE EXPENSE CLAIM

Findings of Fact

VPH Pharmacy, Inc. operated a closed-door pharmacy supplying various nursing homes, adult centers, and assisted living facilities with medical supplies and drugs. In order to do so, VPH relied upon suppliers, such as H.D. Smith Wholesale Drug Company ("H.D. Smith") to provide the necessary materials. There was a long standing arrangement between VPH and H.D. Smith to supply these materials. This relationship continued after the Debtor filed its Chapter 11 petition with this Court on January 13, 2017. H.D. Smith continued this process for at least 20 days and then noted that it had not been paid by VPH. Accordingly, H.D. Smith filed a Motion for Allowance and Payment of Section 503(b)(9) Administrative Expense Claim on May 10, 2017 ("Motion") seeking Section 503(b)(9) status for goods totaling $282,265.10. Thereafter, the Debtor converted to Chapter 7 and the Chapter 7 Trustee filed an Objection to the Motion on September 22, 2017 claiming that H.D. Smith has not shown delivery of the goods in question. On September 26, 2017 H.D. Smith filed a Supplemental Motion attaching approximately 200 pages.

At the October 4, 2017 hearing, counsel for H.D. Smith detailed the method the Court should follow to confirm the delivery and receipt of the various materials. As detailed by counsel, the truck

1

shipment manifest details various bar code numbers, which in turn link to packing slips which contain item numbers and carton numbers delivered to VPH at its 5376 Miller Road facility. Also, the routed order sheet noted a signature acknowledging delivery and receipt of the items. The Affidavit of Ron Castaldo of United Delivery Service ("UDS") confirms the delivery of these goods and the Affidavit of Dan Howard of H.D. Smith also confirms delivery of these goods. As stated in the Supplemental Motion, all but $1,278.70 of the goods mentioned in the original Motion were delivered to the Debtor 20 days before the petition date. Also attached to the Supplemental Motion is the email of Debtor's Chapter 11 counsel which states: "John, we have reviewed your motion for Section 503(b)(9) administrative expense claims and agree that the amounts are correct. The Debtor at this point does not have the funds to pay. We are open to a resolution of this matter. Do you have a suggestion regarding how to proceed?"

In response, the Trustee argued that although delivery of the goods may have been made to the Debtor, H.D. Smith failed to show receipt of the goods. At the end of the hearing, the Court allowed H.D. Smith the opportunity to supplement the record.

After the October 4, 2017 hearing, H.D. Smith submitted the Affidavit of Robert Denta, the Distribution Center Manager for H.D. Smith. This Affidavit, along with the Affidavits of Mr. Castaldo and Mr. Howard attached to H.D. Smith's Supplemental Motion filed on September 26, 2017, show that the goods in issue here are controlled substances subject to very strict control such that the delivery of the products in question must have been received by VPH. Also, the Affidavits make it clear that H.D. Smith has attempted to confirm receipt of these products by contacting former employees of VPH, but that these efforts are stalled by the reluctance of these individuals to testify.

In particular, each Affidavit detailed the process that these goods are handled, shipped, delivered, and received. Mr. Denta stated in his Affidavit:

> 5. H.D. Smith is a distributor as that term is defined by the Code of Federal Regulations and therefore must comply with applicable federal statutes and regulations when delivering controlled substances to its customers.
>
> 6. Federal statutes and regulations require that delivery of controlled substances be made only to the purchaser of the products at the location designated by the purchaser and requires H.D. Smith as a distributor, to maintain records, which include the date and quantity of each shipment and the name, address and federal registration number of each person to whom a shipment was made. *See 21 U.S.C. § 801, et seq. and 21 CFR 1301, et seq.*
>
> 7. Many of the products which H.D. Smith sold and delivered to VPH Pharmacy, Inc. ("VPH") prior to February 2015 were controlled substances as defined by federal statute.
>
> 8. As a result, H.D. Smith complied with the legal requirements for delivery and record keeping of controlled substances for each and every delivery made to VPH, whether or not a particular delivery included controlled substances as defined by the federal statute.
>
> 9. Out of an abundance of caution, H.D. Smith continued to comply with the legal requirements for the delivery and record keeping of controlled substances for all goods sold to VPH after January 2015, as if the goods were defined as controlled substances under federal law.
>
> . . .
>
> 18. The only products which H.D. Smith had delivered to the address designated by VPH, as set forth in **Exhibits A** and **B**, were products sold by H.D. Smith to VPH.
>
> 19. No products sold to VPH by H.D. Smith were delivered to an entity other than VPH.
>
> 20. All products sold by H.D. Smith to VPH were delivered to VPH at the address it designated pursuant to federal law.
>
> 21. No products sold by H.D. Smith to entities other than VPH were delivered to the address designated by VPH.

3

22. As reflected on the exhibits to H.D. Smith's Supplemental Motion for Allowance of Section 503(b)(9) Administrative Expense Claim, which was filed with this Court on September 26, 2017, all products delivered to VPH within twenty (20) days before VPH's bankruptcy filing were delivered to VPH at the address VPH designated pursuant to federal statute.

23. All products received by VPH from H.D. Smith within twenty (20) days before VPH's bankruptcy filing were sold to VPH in the ordinary course of VPH's business.

The delivery address referenced by Mr. Denta is 5376 Miller Road, Swartz Creek, Michigan 48473, as confirmed by the DEA Registration Validation Result of the U.S. Department of Justice, Drug Enforcement Administration, Office of Diversion Control and the State of Michigan Department of Licensing and Regulatory Affairs.

The earlier Affidavit of Mr. Castaldo detailed the delivery of H.D. Smith's goods to the Debtor at 5376 Miller Road. The attachments to his Affidavit, as well as that of Mr. Howard, evidence the delivery of the goods to 5376 Miller Road, as well as acknowledgment of receipt of those goods by various individuals. As the Second Supplement to the Motion states, H.D. Smith has identified those individuals as Sanjay Jain, Alex Irwin, Fernando Salis, and Dwane Carthion.

In his Response, the Trustee points out that these individuals are not employees of the Debtor, but instead are employees of The DeRosa Group, Inc. ("DeRosa"), as evidenced by W-2 forms for 2015 and recent payroll information for February 2017. Since these individuals were not employed by the Debtor, the Trustee argues the Debtor did not receive these goods.

At the November 15, 2017 hearing, counsel for H.D. Smith produced a report by UHY Advisors MI, Inc. dated August 15, 2016. This report, filed at Docket No. 27 on January 17, 2017 stated that:

The staff of VPH Pharmacy is paid through another related party, the Derosa Group, Inc. ("Derosa Group"). In addition, HP & Associates, the outside CPA firm, prepares monthly bank reconciliations and posts monthly activity in Quick Books, on a cash basis.

The report also stated:

VPH Payroll charges* - Payroll for VPH employees was transferred to a related entity, the Derosa Group, in September 2013. Payroll and payroll tax expense is recorded in VPH's accounting records via monthly journal entries made by HP & Associates. UHY reconciled VPH payroll expense to intercompany payroll charges from Derosa Group for 2014 and 2015... .

Finally, the report identified two of the individuals as employees of the Debtor. The Trustee asserts these individuals are employed by DeRosa, and maintains that receipt of the goods by these individuals was not done by the Debtor, but by DeRosa.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) and (B) (allowance or disallowance of claims against the estate).

## Applicable Statutes

11 U.S.C. § 503(b)(9) states:

    (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including —

    . . .

        (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

Section 503(b)(9) states just as Movant asserts – If the goods are sold in the ordinary course within 20 days prior to the bankruptcy filing and received by the Debtor, an administrative expense claim for the value of the goods sold will be allowed. In this case, the Debtor clearly ordered the drugs at issue, H.D. Smith filled the orders and had them delivered to the Debtor's facility at 5376 Miller Road. The above-indicated Affidavits of Mssrs. Castaldo, Howard, and most notably Denta, along with the attached exhibits, all establish the sale and delivery of the goods.

The contested issue in this matter is receipt of the goods. The Affidavits and attachments all support delivery of the goods, but the Trustee argues that Section 503 requires receipt by the Debtor, which the Trustee claims has not been proved because the goods were received by individuals employed by a company that leased the individuals to the Debtor. The Court finds the Trustee's arguments unpersuasive.

First, the goods at issue here are highly regulated by the federal and state governments. Stringent and strict guidelines must be followed to ensure these goods are put in the hands of those who are trustworthy to handle the goods properly and those guidelines were followed by H.D. Smith. And the Debtor did actually receive the goods directly from H.D. Smith, as admitted by Debtor's counsel in his email to counsel for H.D. Smith.[1] If these goods were not received, both the Debtor and Debtor's counsel would have raised the lack of receipt as a defense. This is especially true for Debtor's counsel, who faces the certainty of having his fees potentially reduced by H.D. Smith's Section 503(b)(9) status, which will have pro rata priority status under Section

---

[1] Debtor's counsel demonstrated an eye to detail in this case by objecting to claims of the Debtor's landlord for rent. In doing so, Debtor's counsel presented a detailed response of expenses incurred by the Debtor to repair the leased area that should be charged to the landlord. While it is possible both the Debtor and Debtor's counsel missed checking the delivery of these goods by H.D. Smith, past experience makes that very unlikely and not sufficient to tip the burden of proof back to H.D. Smith.

507(a)(2). Also, the Debtor's subsequent reports indicate delivery of goods by two suppliers, H.D. Smith and Cardinal Health and that the Debtor subsequently distributed to the various nursing homes and assisted living facilities.

Again, if these goods were not received by H.D. Smith, the Debtor would have complained to the Court that arrangements made by the Debtor with H.D. Smith were breached. No such complaint was made.

The Trustee argues that the individuals who signed for the goods were not employees of the Debtor and therefore the Debtor did not receive these goods. The Trustee does make a valid point. The goods must be received by the Debtor in order to allow H.D. Smith to have Section 503(b)(9) status. For example, goods dropped shipped to a third party do not allow a seller to qualify for Section 503(b)(9) status. *In re Momenta, Inc.*, 455 B.R. 353, 360-61 (Bankr. D.N.H. 2011). But *Momenta* and *In re World Imps., Ltd.,* 862 F.3d 338 (3d Cir. 2017) allow for receipt by either the debtor or his agent. As stated by the *World Imps.* Court:

> Consistent with this Court's holding in *Marin*, we now hold that receipt as used in 11 U.S.C. § 503(b)(9) requires physical possession by the buyer or his agent. And because World Imports took physical possession within the 20-day period prior to commencement of its bankruptcy case, we will reverse the order of the District Court and remand for proceedings consistent with this opinion.

*Id.* at 346.

Or as detailed by *Momenta*:

> The same interpretation must apply to § 503(b)(9) because it is related to, and a part of the remedies provided under the provisions of § 546(c). A seller must be entitled to an administrative expense claim where a debtor received goods, by having either physical possession or constructive possession as specified in UCC § 2-705(2), within twenty days of the commencement of the bankruptcy case. Consequently, a seller may have an administrative expense claim in a drop shipment situation, so long as the debtor at some point had constructive possession of the goods. In the present case, Ningbo shipped goods by sea to Felixstowe, United Kingdom. The record is void of any other details regarding the treatment of the shipment. Ningbo's right to an administrative claim depends on the chain of possession the goods passed

7

through, up to the point of delivery to the Debtor's customer. If, as in *Marin*, the goods arrived at the port in England and were attorned to the Debtor at a storage facility or through receipt by a customs agent, Ningbo might have an administrative expense claim if the Debtor had constructive possession of the goods, because the Debtor would have received the goods. However, if the goods passed from one common carrier to another, until ultimately reaching the third party purchaser, the goods were never received by the Debtor and Ningbo would have no right to an administrative expense claim.

*Momenta*, 455 B.R. at 360-61.

What the Trustee asserts is a direct seller-buyer arrangement, but neither Section 503(b)(9), case law, or the normal course of business requires this. Section 503(b)(9) requires "goods received by the debtor", it does not require "and delivered directly by the seller". Second, using the Trustee's logic, any transaction involving a third party destroys Section 503(b)(9) status. Anything short of <u>the</u> seller delivering to <u>the</u> buyer, in the Trustee's eyes, is fatal. These types of transactions are few and far between in American commerce today because many different people or companies are involved in the sale, delivery, and receipt of goods.

Assuming that the Trustee would concede that a seller's agent can act as a conduit, there is no evidence in the statute that the same is not true for the Debtor-buyer. Here, each individual was at the approved location, 5376 Miller Road, of the Debtor and acknowledged receipt of the goods, and did so as either an employee of the Debtor or as agent for the Debtor. And again, case law, as stated in *World Imps.* and *Momenta*, allow such a receipt.[2]

In essence, the Trustee would require H.D. Smith or any seller seeking Section 503(b)(9) status to prove these individuals are employees of the Debtor. Short of requiring a disclosure of an employment contract, recent pay check stubs, or W-2 forms before each delivery of the goods, there

---

[2] Both *Momenta* and *World Imps.* contain excellent passages analyzing the interplay and connection among various sections of the Bankruptcy Code and the Uniform Commercial Code. For the sake of brevity, this Court adopts those passages as if stated in this Opinion.

8

would be no method to allow a potential Section 503(b)(9) seller to meet the Trustee's standards. In requiring these documents, commerce would grind to a halt and another reason would be handed a seller to not sell to a distressed Chapter 11 debtor.

Finally, adoption of the Trustee's position allows for mischief where it is unnecessary. For example, a company could utilize an employee leasing firm to handle the receipt of goods, file a Chapter 11 petition, and then argue it did not receive the goods in a manner to protect sellers under Section 503(b)(9). A more nefarious entity could devise even more devious methods to avoid such a creditor. While there is no evidence that these acts occurred in this case, the Court will not condone or encourage these schemes.

Since the Court concludes the Debtor did purchase the goods in the ordinary course of business and received these goods within 20 days of its Chapter 11 petition, the Court grants the Motion in the amount of $280,986.40. As agreed by the parties, payment of this amount is stayed until further order of this Court.

Counsel for H.D. Smith is directed to prepare and submit an order consistent with this Opinion and the entry of order procedures of this Court.

**Signed on December 08, 2017**

/s/ Daniel S. Opperman
**Daniel S. Opperman**
**United States Bankruptcy Judge**